FELICE JOHN VITI, Acting United States Attorney (#7007)
TODD C. BOUTON, Assistant United States Attorney (#17800)
SACHIKO JEPSON, Special Assistant United States Attorney (#17077)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682; Email: todd.bouton@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> PLASTIC SURGERY INSTITUTE OF UTAH, INC.; MICHAEL KIRK MOORE JR.; and KRISTIN JACKSON ANDERSEN, <br><br> Defendants. | Case No. 2:23-cr-00010-HCN <br><br> UNITED STATES' MOTION IN LIMINE TO EXCLUDE PROPOSED DEFENSE EXPERT PROFESSOR GOTBERG <br><br> Judge Howard C. Nielson, Jr. |

The United States hereby moves the Court to exclude Dr. Moore's proposed expert, Professor Gotberg, from testifying at trial. From the United States' perspective, a hearing is unnecessary, but if the defendant wants a hearing and the Court allows for that, Professor Gotberg is on vacation and will not be available until July 14th.

**I.   FRE 702 LEGAL STANDARD**

Under Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

>> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Here, Professor Gotberg has no specialized knowledge that will help the trier of fact understand the evidence or determine a fact at issue. Rather, defense seeks to educate the jury on the common law of contracts through her testimony. The common law of contracts has zero relevance to this case and offers zero assistance to the trier of fact. Defendants are charged with criminal violations under 18 U.S.C. §§ 371, 641, 1512, and 2, not with common law contract violations.

## II.   Improper Anticipated Testimony

Dr. Moore filed a notice of disclosure of expert testimony, indicating he intends to solicit expert testimony on issues of general principals of contract common law. *See* ECF 339. For example, Professor Gotberg intends to testify regarding "The law's recognition of the connection between the risk of loss and ownership interest" and "The documentation necessary to legally establish the transference of risk of loss between two contracting parties." *Id*. at 2. Dr. Moore specifies that Professor Gotberg will also testify that "without the contracts between the DOD and the distributor it is impossible to know when or if the risk of loss, and thus the ownership of the product, transfers from the government to the distributor or from the distributor to third parties." *Id*. at 3. During an interview with the United States generously organized by Ms. Nester, Professor Gotberg explained it would be impossible <u>for her</u> to determine ownership without having access to all the downstream contractual arrangements and factual context, which she is not privy to. For example, she has not seen the CDC Provider Agreement.

Professor Gotberg also acknowledged that the only criminal experience she has is that she

took criminal law at Harvard, and she worked on a few criminal cases during her tenure as a clerk at the Ninth Circuit but could not remember any specifics about them. Additionally, when asked why she does not teach criminal law at the law school, she responded, "Because it's not my area of expertise." As such, when she was asked, she was unable to define "government property" as listed in 18 U.S.C. § 641 and was unfamiliar with the standard for determining whether something qualifies as "government property".

But even if she did have a criminal background and could competently testify about the appropriate legal standards presented by the criminal statutes at issue in this case, all of Professor Gotberg's proposed testimony is related to establishing what the law is and should therefore be excluded under FRE 702.

### III.   ARGUMENT

Not only is the proposed testimony impermissible opinion regarding legal standards, but it is also legally inapposite to this particular case. Such testimony will serve no purpose other than to confuse the jury and to provide a backchannel for the defense to present, what is essentially, their own version of jury instructions to the jury.

The Tenth Circuit has recognized, "expert testimony under Rule 702 is proper 'if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. The expert can refer to the law in expressing his opinion, but he may not tell the jury what legal standards must guide their verdict." *US v. Thomas Fairbanks,* Case No. 1:19-cr-00114-JNP, ECF Docket 85 (Judge Jill Parrish)(unpublished)(citing *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*, 468 F. App'x 816, 821 (10th Cir. 2012) (unpublished) (internal citations omitted); *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal

3

conclusions drawn by applying the law to the facts.")).

The testimony that Dr. Moore intends to elicit from Professor Gotberg is impermissible opinion regarding legal standards because it is solely designed to define the legal parameters within which the jury must exercise its fact-finding function. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003). For example, "The law's recognition of the connection between the risk of loss and ownership interest" is essentially testimony regarding the legal standard the jury should employ in deciding the first element of Count 1: "whether the COVID-19 vaccines and vaccination record cards belonged to the United States government." *See* ECF Docket No. 317, Jury Instruction 23. As well as the first element of Count 2: "the COVID-19 vaccines and/or vaccination record cards belonged to the United States government." It is improper for an expert to provide such testimony regarding the law. Rather, the legal standard that is used to determine whether something is government property is only a proper subject for the jury instructions that the court will deliver to the jury.

But more distressing is the fact that Professor Gotberg would be expressing opinions on common law legal standards that do not apply in this case. Her analysis focuses almost entirely on risk of loss, and when pushed to identify other factors that are determinative of ownership at the common law, she mentioned only possession and contractual language. She was unable to identify other factors.

On Monday, the Seventh Circuit clarified the factors the jury must consider when determining whether something belonged to the United States under 18 U.S.C. § 641, specifically dealing with COVID-19 vaccination cards:

> To establish a violation of 18 U.S.C. § 641, the government had to prove that Zhao stole or knowingly converted a "thing of value of the United States"—i.e., government property. *United States v. Kristofic*, 847 F.2d 1295, 1296 (7th Cir. 1988). The key question

4

> here under section 641 is whether the government maintained a property interest in the vaccination cards at the time of theft or conversion. See *United States v. Maxwell*, 588 F.2d 568, 573 (7th Cir. 1978). To answer that question in this case, both parties cite a line of cases involving funds stolen after the government distributed them to third parties. Those cases establish that legal title is not dispositive. Rather, property distributed to a third party remains government property within the meaning of section 641 if "the federal government still maintained supervision and control over the funds at the point when the funds were converted." *United States v. Wheadon*, 794 F.2d 1277, 1283–84 (7th Cir. 1986).

*United States v. Zhao*, No. 23-3366, 2025 WL 1733574, at *3 (7th Cir. June 23, 2025).

The *Zhao* court found no error with the district court's final instruction to the jury that an "item or thing of value belongs to the United States if the federal government maintains sufficient supervision and control over the property after the property was distributed to some other entity." *Id*. at 6. After deliberations began, the jury sent a note to the court asking: "What defines sufficient supervision and control?" The court responded: "There is no additional definition of sufficient supervision and control. That is an issue for you to decide." The Seven Circuit indicated that the district court did not err, but it could have included factors such as,

> [W]hether the government retained a reversionary interest; whether the government restricted the use of the property; whether the government imposed internal controls; whether the government had the right to inspect or access the private entity's records; statutory or regulatory provisions governing the property; and whether the government had the right to terminate the contract or cut off funding to the private entity.

*United States v. Zhao*, No. 23-3366, 2025 WL 1733574, at *3 (7th Cir. June 23, 2025)(citing *Wheadon*, 794 F.2d at 1284–85; *United States v. Scott*, 784 F.2d 787, 790–91 (7th Cir. 1986); *Maxwell*, 588 F.2d at 571–72; see also *United States v. Osborne*, 886 F.3d 604, 611–12 (6th Cir. 2018) (summarizing relevant factors identified by Sixth Circuit and other circuits' case law)). Notice that "risk of loss" is not a factor listed by the court when determining ownership. Professor

Gotberg's anticipated testimony is not only improper, but it fails to identify the appropriate legal standard the jury is to consider in a criminal violation of 18 U.S.C. § 641.

Moreover, the jury is well-positioned to use their commons sense to determine whether something is government property in the absence of expert testimony. *See Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020) (citation omitted); *see also United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011) ("Where the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous." (internal quotation and citation omitted)).

## IV. CONCLUSION

Ms. Nester will still have the ability to seek to enter the contracts as exhibits and question Dr. Disbrow regarding provisions in the contracts. The relevant facts surrounding the contracts are admissible, and Ms. Nester can make arguments about the contracts, but expert legal opinion about common law contracts jurisprudence is unrelated to the criminal statutes at issue in the case and is likely to only confuse and mislead the jury regarding the correct standard that it must apply. These are appropriate subject matter areas for jury instruction, not expert testimony.

Accordingly, the Court should exclude this witness's testimony in its entirety under FRE 702, and the United States will be proposing revisions to the jury instructions on Count 2, incorporating the *Zhaou* case.

RESPECTFULLY SUBMITTED,

FELICE JOHN VITI
Acting United States Attorney

*/s/ Jacob J. Strain*
Jacob J. Strain
Assistant United States Attorney